1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

**ANTHONY CARDENAS,**

Petitioner,

v.

**KIM HOLLAND, et al.,**

Respondents.

Case No. 1:13-cv-01424 LJO MJS (HC)

**FINDINGS AND RECOMMENDATION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

**(Doc. 1)**

17
18
19

Petitioner is a state prisoner proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

20
**I.    BACKGROUND**

21
22
23
24
25
26
27
Petitioner is currently in the custody of the California Department of Corrections. On November 16, 2010, the Institutional Gang Unit concluded that there was sufficient evidence to validate Petitioner as a member of the 'Sureno - El Monte Flores (EMF)' disruptive group. (ECF No. 1-1 at 21-30.) On November 17, 2010, Petitioner was also validated as an associate of the 'Mexican Mafia (EME)' prison gang. (Pet., ECF No. 1-1 at 7-13.) Petitioner asserts that the validation process violated his constitutional rights. (See Pet.)

28
///

1

1  **II.   DISCUSSION**

2      **A.   Screening Standard**

3        Rule 4 of the Rules Governing Section 2254 Cases allows a district court to

4  dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

5  petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing

6  Section 2254 Cases.

7        The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an

8  answer if the motion attacks the pleadings for failing to exhaust state remedies or being

9  in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418,

10  420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to

11  exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using

12  Rule 4 as procedural grounds to review motion to dismiss for state procedural default);

13  Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n. 12 (E.D. Cal. 1982) (same). Thus, a

14  respondent can file a motion to dismiss after the court orders a response, and the Court

15  should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 &

16  n. 12.

17        Moreover, the Advisory Committee Notes to Rule 8 of the Rules Governing

18  Section 2254 Cases indicates that the court may dismiss a petition for writ of habeas

19  corpus either on its own motion under Rule 4, pursuant to the respondent's motion to

20  dismiss, or after an answer to the petition has been filed. See, e.g., Miles v.

21  Schwarzenegger, 2008 U.S. Dist. LEXIS 72056, 2008 WL 3244143, at *1 (E.D. Cal. Aug.

22  7, 2008) (dismissing habeas petition pursuant to respondent's motion to dismiss for

23  failure to state a claim). However, a petition for writ of habeas corpus should not be

24  dismissed without leave to amend unless it appears that no tenable claim for relief can

25  be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

26      **B.   Cognizability of Petitioner's Claim**

27        **1.   Habeas Corpus Jurisdiction**

28        A writ of habeas corpus is the appropriate federal remedy when "a state prisoner

1    is challenging the very fact or duration of his physical imprisonment, and the relief he

2    seeks is a determination that he is entitled to an immediate or speedier release from that

3    imprisonment." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Challenges to prison

4    disciplinary convictions in which the inmate has lost time credits must be raised in a

5    federal habeas corpus action unless the credits have been restored or the disciplinary

6    conviction set aside. Edwards v. Balisok, 520 U.S. 641, 644 (1997). Federal habeas

7    corpus jurisdiction also exists when a prisoner seeks "expungement of a disciplinary

8    finding from his record if expungement is likely to accelerate the prisoner's eligibility for

9    parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing McCollum v.

10   Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)); see also Docken v. Chase, 393 F.3d 1024,

11   1028-29, 1031 (9th Cir. 2004) (challenging state parole board's refusal to provide

12   petitioner with annual review of his suitability for parole).

13        In Docken v. Chase, the Ninth Circuit clarified Bostic's definition of the word

14   "likely" in this context. 393 F.3d at 1031. Expungement of a disciplinary finding is "likely"

15   to accelerate a prisoner's eligibility for parole when his claim has "a sufficient nexus to

16   the length of imprisonment so as to implicate, but not fall squarely within the 'core'

17   challenges identified by the Preiser Court." Docken, 393 F.3d at 1031. An inmate's claim

18   strikes at the core of habeas corpus when it "attack[s] the very duration of [his] physical

19   confinement itself" and seeks "immediate release or speedier release from that

20   confinement." Preiser, 411 U.S. at 487-88, 498. The Ninth Circuit has concluded that a

21   "sufficient nexus" exists, and therefore habeas jurisdiction, where a prison inmate

22   "seek[s] only equitable relief in challenging aspects of [his] parole review that . . . *could*

23   potentially affect the duration of [his] confinement." Docken, 393 F.3d at 1031 (emphasis

24   in original). "The likelihood of the effect on the overall length of the prisoner's sentence . .

25   . determines the availability of habeas corpus." Id. at 1028 (quoting Ramirez, 334 F.3d at

26   858).

27        Language in Ramirez v. Galaza potentially heightens the standard. Ramirez held

28   that habeas jurisdiction does not exist if a successful petition does not necessarily

3

1    shorten Petitioner's sentence. <u>See</u> 334 F.3d at 859 ("habeas jurisdiction is absent, and a

2    § 1983 action proper, where a successful challenge to a prison condition will not

3    necessarily shorten the prisoner's sentence."). Subsequently, in <u>Docken</u> the Ninth Circuit

4    explained that such distinction applied to 28 U.S.C. § 1983 cases, and did not likewise

5    limit habeas corpus cases. <u>Docken</u>, 393 F.3d at 1028.[1] "<u>Ramirez</u> concerned a challenge

6    to internal disciplinary procedures and the administrative segregation that resulted from

7    it. Ramirez's suit did not deal with the fact or duration of his confinement." <u>See, e.g.</u>,

8    <u>Docken</u>, 393 F.3d at 1030 n.4. <u>Docken</u> rejected the premise that habeas and section

9    1983 jurisdiction are mutually exclusive. <u>Id.</u> at 1031 ("As outlined above, the question of

10   the relationship between habeas and § 1983 relief has only explicitly come up before in

11   converse form: whether claims are *not cognizable* under § 1983 because their resolution

12   will necessarily impact the fact and duration of confinement. In the only instance where

13   the Supreme Court addressed whether habeas and § 1983 are necessarily mutually

14   exclusive, the suggestion was that they are not. We agree.") (emphasis in original;

15   citations omitted.).

16          In summary, the Ninth Circuit's discussion of habeas corpus jurisdiction is open to

17   interpretation. However, it is possible that habeas corpus jurisdiction exists if a

18   successful claim could potentially affect the duration of confinement.

19                    2.      <u>Does Petitioner's Gang Validation Affect the Duration of His</u>
                              <u>Confinement?</u>
20

21          Petitioner's challenge to his gang validation may not necessarily accelerate his

22   release from prison. Instead, Petitioner will be subject to segregated confinement and

23   other limitations. Federal courts have struggled with whether such clams are cognizable

24   by way of habeas corpus.

25          The Ninth Circuit, in an unpublished opinion, held that such a claim is not

26   ───────────────
     [1] "Thus, although Supreme Court case law makes clear that § 1983 is not available where a
27   prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any
     mirror-image limitation on habeas jurisdiction. The Court's central concern, in all of the cases cited above,
     has been with how far the general remedy provided by § 1983 may go before it intrudes into the more
28   specific realm of habeas, not the other way around." <u>Docken</u>, 393 F.3d at 1028.

1   cognizable as it does not affect the duration of a petitioner's sentence as required under

2   Preiser v. Rodriguez and Ramirez v. Galaza. See Burton v. Adams, No. 10-15668 (9th

3   Cir. Feb. 23, 2011). Further, several district courts have also found that such claims are

4   not cognizable in habeas. See e.g., Burton v. Adams, 2010 U.S. Dist. LEXIS 22960

5   (E.D. Cal. Feb. 25, 2010); Garcia v. Horel, 2010 U.S. Dist. LEXIS 108720 (N.D. Cal.

6   Sept. 20, 2010); Perez v. McDonald, 2011 U.S. Dist.  LEXIS 40449 (E.D. Cal. April 6,

7   2011).

8         However, other courts have found such claims cognizable. See Flores v. Jacquez,

9   2010 U.S. Dist. LEXIS 106928 at *4 (N.D. Cal. Oct. 5, 2010) ("A further review of

10  California federal cases reveals that the courts have been inconsistent regarding

11  whether a challenge to an indeterminate sentence to administrative segregation based

12  on a gang-validation can be properly addressed in a habeas petition."). For example, in

13  Larriva v. Watson, 2008 U.S. Dist. LEXIS 10287 at *9 (E.D. Cal. Feb. 12, 2008), the

14  court denied such grounds as a basis of a motion to dismiss as the Respondent did not

15  show as a matter of law that the claim could not be presented. In Waco v. Gonzales,

16  2010 U.S. Dist. LEXIS 2141 at *14 n.2 (C.D. Cal. Jan. 6, 2010), the court declined to

17  address whether the claim was foreclosed and proceeded to the merits of the claim. The

18  court reasoned it was possible such placement in segregation could have affected

19  petitioner's release date by affecting his ability to earn good time credits. Id. Further, in

20  Maldonado v. Scribner, 2008 U.S. Dist. LEXIS 2415 (E.D. Cal. Jan. 11, 2008), the court

21  declined to adopt the recommendation of the magistrate judge to dismiss the petition as

22  the potential deprivation of good time credits provided a possible basis for cognizability.

23  Still other courts have not addressed whether the claim was cognizable, and addressed

24  the merits of the claim. See O'Neal v. Horel, 2009 U.S. Dist. LEXIS 24437 (N.D. Cal.

25  March 13, 2009); Garibay v. Horel, 2011 U.S. Dist. LEXIS 55186 (N.D. Cal. May 24,

26  2011).

27        As described above, courts have grappled with whether gang validation

28  sufficiently impacts the duration of a petitioner's sentence to present a cognizable

5

1   habeas claim. Some district courts have found such claims are not cognizable. It is

2   possible, as some courts have found, that the claims are cognizable by way of habeas

3   corpus. Accordingly, this Court finds judicial efficiency dictates that the Court determine

4   the merits of the petition rather than continue to struggle with the more difficult issue of

5   the cognizability of Petitioner's claims.

6         **B.**      **<u>Merits of Petitioner's Claim</u>**

7         1.      <u>Standard of Review</u>

8         Federal courts may review habeas corpus petitions "in behalf of a person in

9   custody pursuant to the judgment of a State court only on the ground that he is in

10   custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

11   § 2254(a). The petition may not be granted with respect to any claim that was

12   adjudicated on the merits in state court unless the state court's adjudication of the claim:

13   "(1) resulted in a decision that was contrary to, or involved an unreasonable application

14   of, clearly established Federal law, as determined by the Supreme Court of the United

15   States; or (2) resulted in a decision that was based on an unreasonable determination of

16   the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

17   2254(d).

18         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

19   state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

20   question of law or if the state court decides a case differently than [the] Court has on a

21   set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120

22   S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

23         "Under the 'unreasonable application' clause, a federal habeas court may grant

24   the writ if the state court identifies the correct governing legal principle from [the] Court's

25   decision but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at

26   413. "[A] federal habeas court may not issue the writ simply because that court

27   concludes in its independent judgment that the relevant state-court decision applied

28   clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

> ### 2.   No Clearly Established Federal Law Protects Petitioner's Claimed Right

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; Norris v. Morgan, 622 F.3d 1276, 1285 (9th Cir. 2010). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).

The Supreme Court holdings on prisoners' rights in administrative segregation placement decisions are quite limited and are most recently found in Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), which set out the criteria for determining whether there is a protected liberty interest, and Wilkinson v. Austin, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005), which held that an indefinite placement in a harsh administrative segregation unit deprived inmates of a protected liberty interest; the latter case also summarized the procedural protections for such a deprivation that already had been identified by the Supreme Court.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Deprivations closely related to the expected terms of confinement may amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." Sandin, 515 U.S. at 484-87. An interest of "real substance" generally will be limited to freedom from restraint

1   that imposes "atypical and significant hardship on the inmate in relation to the ordinary

2   incidents of prison life" or "will inevitably affect the duration of [a] sentence." Id. The

3   Supreme Court later held that indefinite placement in a restrictive "supermax" facility,

4   where inmates are not eligible for parole consideration, imposes an "atypical and

5   significant hardship within the correctional context." See Wilkinson, 545 U.S. at 223-25.

6        When placement in administrative segregation implicates a protected liberty

7   interest, the next step is to determine what process is due. In Wilkinson, the Court

8   explained that administrative segregation placement requires less procedure "than in

9   cases where the right at stake is the right to be free from confinement at all." Wilkinson,

10  545 U.S. at 225 (referring to the requirements set forth in Wolff v. McDonnell, 418 U.S.

11  539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and Morrissey v. Brewer, 408 U.S. 471,

12  489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). "Where the inquiry draws more on the

13  experience of prison administrators, and where the State's interest implicates the safety

14  of other inmates and prison personnel, the informal, nonadversary procedures set forth

15  in [Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 15, 99 S.

16  Ct. 2100, 60 L. Ed. 2d 668 (1979), and Hewitt v. Helms, 459 U.S. 460, 103 S. Ct. 864,

17  74 L. Ed. 2d 675 (1983)], provide the appropriate model." Wilkinson, 545 U.S. at 228-29.

18  In Greenholtz, the Court had determined that the level of process due in parole suitability

19  decision included an opportunity to be heard and notice of any adverse decision; in

20  Hewitt, the Court had determined that the level of process due for inmates being

21  transferred to administrative segregation included some notice of the charges and an

22  opportunity to be heard. Wilkinson, 545 U.S. at 229. "[T]hese cases remain instructive

23  for their discussion of the appropriate level of procedural safeguards." Id. Accordingly,

24  the "clearly established federal law" for purposes of § 2254(d) requires that an inmate

25  being transferred to administrative segregation that amounts to an atypical and

26  significant hardship must be provided with (1) notice of the charges or reasons such

27  placement is being considered, (2) an opportunity to be heard, and (3) notice of any

28  adverse decision.

1   The Supreme Court has not held that the procedural protections include any
2   evidentiary sufficiency requirement for the decision to place an inmate in administrative
3   segregation. In a prison disciplinary hearing, due process requires that there be an
4   evidentiary basis for the prison officials' decision. See Superintendent v. Hill, 472 U.S.
5   445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (standard is met if there is "some
6   evidence" from which the conclusion of the administrative tribunal could be deduced).
7   The Supreme Court has not extended Superintendent v. Hill to the administrative
8   segregation placement context. Cf. Swarthout v. Cooke, 131 S. Ct. 859, 862, 178 L. Ed.
9   2d 732 (2011) (implicitly declining to find, for purposes of section 2254(d) habeas
10  analysis, that constitutional protections required for parole denial included any
11  evidentiary sufficiency requirement). While not required based on Supreme Court
12  precedent, the Ninth Circuit and district courts within the circuit have applied the "some
13  evidence" standard to an inmate's placement in Secured Housing Unit ("SHU") for gang
14  affiliation. See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003).

15         3.      Petitioner Received His Constitutionally Protected Procedural Rights
16         Based on the law as described above, Petitioner has a protected liberty interest at
17  issue with regard to indefinite placement in SHU housing. SHU conditions are severe
18  and may affect a Petitioner's eligibility for parole. Accord Wilkinson, 545 U.S. at 224
19  (necessity of harsh conditions in light of danger that high-risk inmates pose to prison
20  officials and other inmates does not diminish "conclusion that conditions give rise to a
21  liberty interest in their avoidance"). The potential to spend years in the harsh conditions
22  of the SHU presents an atypical and significant hardship and therefore amounts to a
23  deprivation of a protected liberty interest.

24         In light of the absence of Supreme Court authority imposing any evidentiary
25  sufficiency requirement or any requirement for the reliability of evidence, federal habeas
26  relief cannot be granted to Petitioner on the basis of a claim that the placement decision
27  is based on insufficient evidence or evidence that lacks sufficient indicia of reliability.
28  Much of Petitioner's claims relate to the sufficiency of the evidence used by the

1   institutional gang investigator to find Petitioner as an associate of the Mexican Mafia

2   (EME) Prison gang. (See generally Pet.) Petitioner's due process claim based on

3   sufficiency and reliability of the evidence therefore must be denied.

4                    4.      Some Evidence Supported the Administrative Decision

5           Assuming Superintendent v. Hill did apply to an administrative segregation

6   placement decision, Petitioner's claim fails. Sufficient evidence exists to support the

7   decision to validate him as a gang associate. (ECF No. 1-1 at 13.) Three pieces of

8   evidence were used by prison officials to conclude that Petitioner met the criteria for

9   validation as an associate of the EME prison gang. The three pieces of evidence -

10  individually and collectively - provided some evidence to support the validation decision.

11  According to the finding of Petitioner's administrative appeals, the decision was based

12  on evidence in the form of: (1) a November 8, 2010 investigation which resulted in

13  finding a Mactlactlomei symbol handwritten in a note drafted by Petitioner,[2] (2) a tattoo of

14  an Aztec Eternal War Shield used by the gang as a sign of loyalty, and (3) a confidential

15  memorandum dated August 5, 2008 that provided a direct link of gang association. (ECF

16  No. 1-1 at 12-13.) The Court of Appeal found all the sources provided 'some evidence'

17  supporting the decision to validate Petitioner. Determinations of a factual issue by a

18  state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). While Petitioner

19  claims that the evidence relied upon did not meet the requirements of the relevant

20  California Code of Regulations, he does not explain how the evidence is otherwise

21  unreliable. See 15 Cal. Code Regs. § 3378.

22          Thus, even if Superintendent v. Hill's some evidence requirement was a

23  constitutionally required procedural protection for administrative segregation placement,

24  the California court's rejection of his due process claim would not have been not contrary

25  to or an unreasonable application of such requirement. Petitioner is not entitled to relief

26  on this claim. As it appears not tenable claims for relief can be pleaded the claim shall be

27  _____

          [2] The Mactlactlomei symbol is the ancient Meso-American numeral 13, and is recognized as an
28  identifier of EME prison gang association.

dismissed without leave to amend. <u>Jarvis</u>, 440 F.2d 13, 14.

## III.  <u>CONCLUSION</u>

As explained above, while Petitioner's claim is potentially cognizable in federal habeas, the claim fails on the merits and must be denied as Petitioner received constitutionally adequate safeguards at his gang validation proceeding. Petitioner has not presented tenable claims for relief, and is not entitled to dismissal with leave to amend. <u>Jarvis</u>, 440 F.2d at 14. The Court therefore orders that the petition be summarily dismissed.

## IV.  <u>RECOMMENDATION</u>

Accordingly, it is RECOMMENDED that the petition be DISMISSED without leave to amend.

These findings  and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:   December 10, 2013         /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE